**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE SHOSHONE INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 4582-79 L, 4583-79 L<br>Judge Hewitt |
| THE ARAPAHO INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 4592-79 L, 4593-79 L<br>Judge Hewitt |

**TRIBES' MOTION FOR LEAVE TO AMEND PETITIONS**

Pursuant to RCFC 15(a), Plaintiffs Eastern Shoshone and Northern Arapaho Tribes (collectively "Tribes") respectfully request leave to amend their Petitions to encompass damages suffered by the Tribes prior to August 14, 1946. Proposed Amended Petitions are attached hereto as Exhibits A and B. The only substantive amendments are to Paragraphs 9 and 10 of the Shoshone petition and paragraphs 10 and 11 of the Arapaho petition to remove August 14, 1946, as the earliest date for the claims and substitute an earlier date. In the Shoshone petition, July 3, 1868 is substituted, which is the date the Wind River Reservation was established. In the

Arapaho petition, 1878 is substituted, which is when the Arapaho Tribe became a beneficial owner of an undivided one-half interest in the Wind River Reservation. In addition, the spelling and designation of the Tribes' names have been modernized in limited instances for clarity.

The Tribes have viable claims for earlier time periods under the recent, final ruling of the Court of Appeals for the Federal Circuit in this case regarding limitations. *Shoshone Indian Tribe v. United States*, 364 F.3d 1339 (Fed. Cir. 2004), *cert. denied* 125 S.Ct. 1824, 1826 (April 18, 2005). The Federal Circuit affirmed this Court's ruling (*Shoshone Indian Tribe v. United States*, 51 Fed. Cl. 60 (2001)) that the Tribes were not barred by the statute of limitations (28 U.S.C. § 2501) from seeking damages for "losses to or mismanagement of trust funds" which may have occurred more than six years before the Tribes filed their Petitions. This Court denied the Tribes' prior motion to amend their Petitions on July 27, 2004, as unripe, because the Federal Circuit's decision had not yet become final. The motion is now ripe.

The limitations issue has also been addressed in several recent decisions of this Court in other cases, relying on its own and the Federal Circuit's decisions in *Shoshone*, including one issued within the past few weeks. *See Osage Nation v. United States*, 57 Fed. Cl. 392 (2003); *Wolfchild v. United States*, 62 Fed. Cl. 521 (2004); *Osage Tribe v. United States*, ___ Fed. Cl. ___, 2005 WL 2807671 (October 27, 2005). Justice requires that the Tribes be granted leave to amend their Petitions to cover breaches of fiduciary and statutory duties occurring before August 14, 1946.

## I. BACKGROUND

On October 10, 1979, the Tribes filed their Petitions in this case, seeking damages for alleged breaches of fiduciary and statutory duties occurring since August 14, 1946. *See* 28 U.S.C. § 1505 (limiting the jurisdiction of the Court of Federal Claims with respect to Indian

claims against the United States to claims that accrued after August 13, 1946). The United States answered the Petitions on January 18, 1980.

Beginning in 1990, Congress enacted a series of statutes (the "Appropriations Acts") which provide that the statute of limitations shall not commence to run on a broad range of claims affecting Indian trust funds – including claims at issue here – until a proper accounting is furnished to the beneficiary.[1] The full text of the most recent version provides:

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.

Department of the Interior and Related Agencies Appropriations Act of November 10, 2003, Pub. L. No. 108-108, 117 Stat. 1263. It is undisputed that the accounting contemplated by the Appropriations Acts has never been provided to the Tribes.

Relying on the Appropriations Acts, this Court issued an opinion on November 30, 2001, rejecting the Government's contention that breaches occurring more than six years prior to the 1979 filing of the Petitions was barred by 28 U.S.C. § 2501's six-year statute of limitations. Noting that "Congress has not shown itself at all unwilling to address and provide remedies for tribes even when the grievances to be redressed arose in the earliest days of this country," the Court ruled that Tribal claims "concerning losses to or mismanagement of trust funds" do not

[1] The Appropriations Acts, with minimal variations, are as follows: Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63, 115 Stat. 414; Act of February 20, 2003, Pub. L. No. 108-7, 117 Stat. 11; Act of November 10, 2003, Pub. L. No. 108-108, 117 Stat. 1263.

accrue until the federal government furnishes an accounting concerning such losses or mismanagement. *Shoshone Indian Tribe v. United States*, 51 Fed. Cl. 60, 67, 69 (2001).

The Federal Circuit affirmed this ruling in part on April 7, 2004, holding that the "Act provides that claims falling within its ambit shall not accrue, *i.e.* 'shall not commence to run,' until the claimant is provided with a meaningful accounting." *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1347, *reh. and reh. en banc denied* (Fed. Cir. 2004). The Federal Circuit ruled that the Act delays the accrual of claims relating not only to the Government's mismanagement of funds actually deposited into tribal trust accounts, but also to the Government's failure or delay in collecting payments under mineral leasing contracts, depositing those monies into interest bearing trust accounts, and assessing penalties for late payments. 364 F.3d at 1349-50. On April 18, 2005, the United States Supreme Court denied certiorari. 125 S.Ct. 1824, 1826 (2005).

While the appeal in *Shoshone* was pending, this Court, in *Osage Nation v. United States*, 57 Fed. Cl. 392 (2003), addressed claims regarding mismanagement of tribal trust funds from 1873 to the present. The Government argued that the Osage Tribe's claims accruing before August 13, 1946, were time-barred by Section 12 of the Indian Claims Commission Act ("ICC Act"), 60 Stat. 1052, and that the Court lacked subject matter jurisdiction over such claims. Applying its holding in *Shoshone*, this Court ruled that a claim within the scope of the Appropriations Acts does not accrue until the requisite accounting is provided to the tribe. *Id.* at 397. Because the only arguable accounting "concerning losses to or mismanagement of trust funds" had been provided to the Osage tribe on December 31, 1999, the tribe's claims accrued for limitations purposes on that date. The Court concluded that the congressional intent underlying the Appropriations Acts was "to allow Indian tribes to file tribal trust fund

mismanagement claims within six years after an accounting of the trust fund is furnished to the Tribe *no matter when the mismanagement may have occurred*." *Id.* at 398 (emphasis added).

The Wind River Tribes have not yet received the accounting to which they are entitled by the Appropriations Acts, and thus may pursue claims for losses to or mismanagement of their trust funds no matter when the breach of duty may have occurred.

## II. ARGUMENT

RCFC 15(a) provides that after a responsive pleading has been filed, a complaint may be amended "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Supreme Court has emphasized that the standard of Rule 15(a) is a liberal one. "If the underlying facts and circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. [Unless there is a] reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Applying these considerations in this case, the Tribes should be permitted to amend their Petitions.

First, the Federal Circuit's decision in *Shoshone* and this Court's 2003 decision in *Osage* demonstrate that the Tribes' amended claims "may be a proper subject of relief." The amended Petitions are the Tribes' prompt, good faith response to these decisions. When the original Petitions were filed in 1979, the Tribes limited their claims to breaches that occurred on and after August 14, 1946, because that was the apparent jurisdictional cutoff date established by 28 U.S.C. § 1505, and there was no precedent for the Tribes to seek recovery for earlier breaches.

The Appropriations Acts had not yet been enacted; indeed, they would not be enacted for more than a decade after these actions were filed. Furthermore, the impact of the Appropriations Acts on tribal claims for mismanagement occurring more than six years prior to filing was not passed upon by any court until this Court's decision in the instant case (51 Fed. Cl. 60 (2001)). Appellate review of that decision has only recently become final on denial of petitions of certiorari by the U.S. Supreme Court on April 18, 2005. 125 S.Ct. 1824, 1826. In the interim, this Court applied its own ruling in *Shoshone* to hold, for the first time, that covered claims accruing prior to August 14, 1946, were not barred by the ICC Act either. *Osage Nation v. United States*, 57 Fed. Cl. 392 (2003).

Second, there has been no undue delay or dilatory motive by the Tribes in seeking this amendment. The Government appealed this Court's decision regarding limitations. After the Federal Circuit issued its ruling in 2004, the Tribes promptly filed a motion to amend. The Federal Circuit's ruling remained subject to the appellate process, as rehearing, rehearing *en banc*, and certiorari were sought. This Court held on July 27, 2004, that the Tribes' motion to amend was premature due to the pendency of the appeal. The appellate process is now complete, and this motion is timely.

Third, the Government will not be prejudiced if the Petitions are amended. The proposed amendment does not change the nature of the claims against the Government; it simply extends them back in time to encompass periods prior to August 14, 1946.[2] Despite ruling that the prior motion to amend was unripe, the Court, in an Order issued August 27, 2004, allowed the Tribes to seek through discovery documents relating to claims of alleged mismanagement occurring both before and after 1946. *Id.* at 3 n. 2. Many such documents from both periods have already

[2] The Tribes' claims for such earlier periods would of course be subject to the Federal Circuit's ruling regarding the scope of preserved claims. *See, e.g., Shoshone*, 364 F.3d at 1349-50.

been produced. The proposed amendment will not require the Government to revisit or duplicate discovery efforts that it already has completed.

Furthermore, the alternative to amending the Petitions would be for the Tribes to file new actions addressing the period before August 14, 1946. Under the Federal Circuit's ruling in *Shoshone*, and this Court's rulings in *Shoshone* and *Osage*, such actions would be timely. It makes little sense, however, to bifurcate the Tribes' claims in such a manner. Judicial economy requires that the Tribes' pre-1946 claims should be consolidated with their identical post-1946 claims.

## III. CONCLUSION

For the reasons stated above, the Tribes respectfully request leave to amend their Petitions to expand the time period covered by their claims to encompass the periods both before and after August 14, 1946.

DATED: November 18, 2005.

Respectfully submitted,

s/Harry R. Sachse
by Richard M. Berley w/auth'n
HARRY R. SACHSE
Sonosky, Chambers, Sachse
Enderson & Perry, LLP
1425 K Street, NW, Suite 600
Washington, DC 20005
(202) 682-0240 (Telephone)
(202) 682-0249 (Facsimile)
hsachse@sonosky.com
*Counsel of Record for Eastern Shoshone Tribe*

s/Richard M. Berley
RICHARD M. BERLEY
Ziontz, Chestnut, Varnell,
Berley & Slonim
2101 4th Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 (Telephone)
(206) 448-0962 (Facsimile)
rberley@zcvbs.com
*Counsel of Record for Northern Arapaho Tribe*

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading, including Exhibits, is to be served on Terry Petrie, counsel of record for the United States, contemporaneously with this filing via the Court's electronic filing system.

s/Richard M. Berley
*Counsel of Record for Northern Arapaho Tribe*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE SHOSHONE INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 4582-79 L, 4583-79 L<br>Judge Hewitt |
| THE ARAPAHO INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 4592-79 L, 4593-79 L<br>Judge Hewitt |

**FIRST AMENDED PETITION – EASTERN SHOSHONE INDIAN TRIBE [PROPOSED]**

The Eastern Shoshone Indian Tribe (the Tribe) for its petition alleges:

ALLEGATIONS APPLICABLE TO ALL CLAIMS

1. This petition is filed pursuant to 28 U.S.C. 1491 and 1505.

2 This petition does not assert any claim, or seek to recover any damages with respect to any claim, which is now pending before this Court or any other court.

3. The Tribe is a federally recognized Indian tribe, residing on the Wind River Indian Reservation in Wyoming. The Tribe originally occupied some 44,672,000 acres in Wyoming, Colorado, Idaho and Utah (Treaty of July 2, 1863, 18 Stat. 685). In 1868, the Government induced the Tribe to give up its vast territory and move to a reservation of some 3,054,182 acres in Wyoming (Treaty of July 3, 1868, 15 Stat. 673). In 1872, the United States persuaded the Tribe to sell 710,642 acres of the southern portion of the Reservation for $27,500 (Agreement of September 26, 1872, 18 Stat. 291, 292) – a sum since judicially declared to be unconscionable (Shoshone Tribe of Indians of the Wind River Reservation, Wyoming v. United States, 3 Ind. Cl. Comm. 313, 343 (1954)). In 1896, a smaller tract of land in the northeast corner of the Reservation was also removed (Agreement of April 21, 1896, 30 Stat. 93, 94). The Reservation currently consists of the land reserved by the Treaty of 1868, less the land removed in 1872 and 1896, plus a small tract of land at the northern border of the 1868 reservation, extending outside the 1868 boundaries.

4. In 1870, a band of the Northern Arapahoes were permitted by the Tribe to stay at the Reservation for a short time. After a few months they moved away. In 1878, a band of Northern Arapahoes was brought to the Reservation under military escort. Other Arapahoes came in increasing number and were maintained on the Reservation by the United States. There was no judicial redress since by law the courts were closed to the Tribe. Act of March 3, 1863, 12 Stat. 767. Sixty years later, when Congress granted the Tribe special permission to have this particular grievance heard, the Supreme Court held that the 1878 action of the United States constituted a taking under the Fifth Amendment of an undivided one-half of the Shoshone Reservation for the benefit of the Arapaho Tribe. Shoshone Tribe v. United States, 299. U.S. 476 (1937). Since 1878, the Shoshone Tribe and the Arapaho Tribe, accordingly, have been

owners in common of the Reservation – now referred to as the Wind River Reservation.

5. By Act of March 3, 1905, 33 Stat. 1016, 1019, the United States through a "cession in trust" opened the northern two-thirds of the Reservation to non-Indian settlement. Under the Act the United States paid nothing for the cession, but agreed to dispose of surplus land to settlers with the proceeds to go to the Tribes. The Tribes remained the equitable owners of the land, including all mineral resources, until actually disposed of by the United States. United States v. Shoshone Tribe, 304 U.S. 111, 114 (1938), Ash Sheep Company v. United States, 252 U.S. 159 (1920). There were known oil and gas resources within the "opened" part of the Reservation. By the Act of August 21, 1916, 39 Stat. 519, Congress empowered the Secretary of the Interior to lease the "opened" land for oil and gas "under such terms and conditions as shall be by him prescribed" with the proceeds of royalties from the leases to be "applied to the use and benefit of said Tribe***".

6. Little of the land opened for non-Indian settlement by the 1905 Act was actually settled by non-Indians. By Act of July 27, 1939 (25 U.S.C. 575), all undisposed of lands in the opened portion of the Reservation, not within a reclamation project, were restored to the Tribes. In the meantime, however, in 1920, Congress authorized the Riverton Reclamation Project. It embraced about 332,000 acres. Acts of June 5, 1920, 41 Stat. 874, 915 and March 4, 1921, 41 Stat. 1367, 1404. The project was constructed and through the years about 100,000 acres of the 332,000 acres were sold and the proceeds credited to the Tribes. An additional 70,500 acres, not required for the project, ultimately were restored to the Tribes under Section 4 of the Act of August 15, 1953, 67 Stat. 592, 613. Under that Act, the remaining 161,520 acres was ceded to the Government subject to a 90% interest of the Tribes to the proceeds of mineral leases to be administered under the "mining and mineral leasing laws of the United States." By Act of

August 27, 1958, 72 Stat. 935, the entirety of the mineral interests under those lands were "declared to be held by the United States in trust for the Shoshone and Arapahoe Tribes" and were required to be administered under the Indian Leasing Act of May 11, 1938, 52 Stat. 347, the general statute governing tribal oil and gas.

7. By Act of May 19, 1947, 61 Stat. 102, 25 U.S.C. 611 et seq., the Secretary of the Interior was directed to divide the trust funds on deposit in the Treasury of the United States to the joint credit of the Shoshone and Arapahoe Tribes of the Wind River Reservation into separate accounts. Since the effective date of that Act, all income derived from tribal property held in common by the two Tribes has been divided evenly. From each Tribe's one-half, 85% is paid in a monthly per capita to the respective members of the Tribe. The remaining 15%, referred to as the "15% fund" is maintained in the Treasury of the United States or under the control of the Secretary of the Interior.

8. Under the Treaty of July 3, 1868, supra, the Trade and Intercourse Acts as amended, 25 U.S.C. 177, and the Commerce, War and Treaty powers of the Constitution, the Act of August 21, 1916, supra, the Act of May 11, 1938, supra, and decisions of this Court and the United States Supreme Court, the United States has a fiduciary duty to the Tribe requiring that it exercise "the most exacting fiduciary standards" in managing the Tribe's land and mineral estate and trust funds, Navajo Tribe of Indians v. United States, 176 Ct. Cl. 502, 507 (1966).

9. The Tribe at all times since July 3, 1868, has been the beneficial owner of funds, real property and mineral interests held in trust and managed by the United States for the Tribe.

10. In breach of its fiduciary and statutory duties to the Tribe, the defendant, for the entire period, has failed to manage plaintiff's trust funds as a prudent administrator and has failed to manage or administer the Tribes' mineral and other income producing property at least

as well as an informed owner of such property.

CLAIM I:
(FAILURE OR DELAY IN COLLECTING FUNDS DUE TO THE TRIBE)

11. Defendant, at all times relevant, has been under fiduciary and statutory obligations to collect funds owing to the Tribe arising from the use or lease by defendant or third parties of the Tribe's mineral estate including but not limited to oil, gas, uranium, and gravel under the management and control of the defendant.

12. In breach of its fiduciary duty to the Tribe and to the Tribe's detriment, defendant has delayed unreasonably, or failed to collect, such funds.

CLAIM II:
(DELAY IN DEPOSITING)

13. On information and belief, the Tribe alleges that defendant, in breach of its fiduciary duty to the Tribe and to the Tribe's detriment, delayed for unreasonable periods of time depositing the Tribe's funds in interest bearing accounts.

CLAIM III:
(HOLDING TRUST FUNDS IN THE TREASURY
AT INADEQUATE INTEREST)

14. During a major part of the period in suit, defendant has held plaintiff's trust funds in its Treasury at a rate of 4 percent per annum simple interest. Interest earned in the Treasury is segregated into separate accounts and no interest is paid by the United States on these accounts.

15. During relevant times, there were readily available for acquisition with such funds, pursuant to 25 U.S.C. 162a, various obligations of the defendant and its agencies, as well as bank certificates or obligations guaranteed or secured as required by 25 U.S.C. 162a carrying interest rates higher than 4 percent.

16. The defendant breached its fiduciary duty to the Tribe to the Tribe's detriment by, in effect, borrowing tribal trust funds for its own purposes and benefit and by failing to invest such funds and the interest on such funds to earn maximum income for the Tribe.

CLAIM IV:
(<u>INVESTMENT AT INADEQUATE RATES</u>)

17. Defendant invested certain of the Tribe's trust funds in various governmental and private securities guaranteed or secured as required by 25 U.S.C. 162a. On information and belief, the Tribe alleges that defendant did so in breach of its fiduciary duty to the Tribe and to the Tribe's detriment in that at the time the investments were made other securities or obligations of the same or similar type, guaranteed or secured as required by 25 U.S.C. 162a, were readily available for investment at higher interest rates.

CLAIM V:
(<u>IMPROPER EXPENDITURES FROM INTEREST BEARING ACCOUNTS</u>)

18. Plaintiff alleges and believes that defendant has consistently made expenditures from plaintiff's interest bearing funds or investments returning a higher yield when lower yield funds or funds bearing no interest were available, all in violation of defendant's statutory and fiduciaries duties to plaintiff.

CLAIM VI:
(<u>MISUSE OF MISCELLANEOUS REVENUES</u>)

19. In breach of its fiduciary duty to the Tribe and to the Tribe's detriment, defendant had failed to deposit tribal funds in the United States Treasury and has used such funds derived from the Tribe's trust property for purposes not for the exclusive benefit of the Tribe.

CLAIM VII:
(MISMANAGEMENT OF CREDIT PROGRAM)

20. The defendant, through the Secretary of the Interior, manages a tribal credit program. The Tribe alleges on information and belief that the defendant in breach of its fiduciary duty to the Tribes, and to the Tribe's detriment, has mismanaged the program by, among other things, keeping large sums of tribal money in non-interest bearing checking accounts when proper management would require such funds to be placed at interest.

CLAIM VIII:
(MISMANAGEMENT OF PLAINTIFF'S OIL AND GAS ESTATE)

21. At all times relevant, the Tribe has been the beneficial owner of an undivided one-half interest in substantial oil, gas and mineral deposits on the Reservation. Under the Treaty of July 3, 1868, 15 Stat. 673, the Trade and Intercourse Acts as amended, 25 U.S.C. 177, the statutes regulating oil and gas leasing on Indian lands including but not limited to 25 U.S.C. 396-398 and the Act of August 2, 1916, 39 Stat. 519, as well as the regulations under such acts (including 25 CFR Parts 171 and 184 and 30 CFR Part 221), the United States has the obligation to manage the tribal oil and gas resource in a manner consistent with defendant's superior skill and knowledge in the area of oil and gas development and management and in all instances at least equal to the management of oil and gas lands by an informed owner of such lands. Defendant, in breach of its statutory and trust responsibility to the Tribe, and to the Tribe's detriment has mismanaged plaintiff's oil and gas estate as set out in the following paragraphs:

22. The defendant, through its Bureau of Reclamation, inconsistent with its fiduciary and statutory duties to the Tribe has burdened the Tribe's oil and gas estate and interfered with its development by inappropriately and unnecessarily applying regulations and restrictions employed on public lands of the United States to tribal lands in particular to tribal oil and gas

lands within reclamation areas.

23. The defendant has excluded from oil and gas leases river bottoms and lake bottoms owned by the Tribe.

24. The defendant has held large sums of money received as deposits for bids for the right to lease the Tribe's oil and gas without placing the same at interest for the benefit of the Tribe.

25. The defendant has failed to require oil and gas lessees to comply with the terms of their leases on tribal lands and has failed to oversee, monitor and administer said oil and gas leases on a basis at least equal to the management of oil and gas lands by the informed owner of oil and gas lands in, among others, the following respects:

a) The defendant has not required that royalties paid under the Tribe's oil and gas leases be the stated percentage of the fair market value of the oil and gas produced, but in violation of defendant's own regulations has consistently accepted the lessees' report of price received for the gas or oil as the value thereof with the result that the Tribe lost significant revenues to which it is entitled under its leases and defendant's own regulations.

b) Where natural gas has been produced, the defendant has consistently accepted the interstate controlled price of natural gas or prices lower than the controlled price as the value of the gas rather than the intrastate price which during a substantial portion of the time at issue has been substantially higher. As a result, the Tribe has received its royalty percentage based upon a small fraction of the actual value of the gas produced.

c) The defendant has not required that lessees account for and pay royalties on the value of liquid hydrocarbon substances produced and saved on the leased premises as

required by the regulations and the provisions of the leases and has thereby failed to obtain for the Tribe the highest price permitted under the lease.

d) The defendant has not required prompt payment of royalties on a monthly basis as required by the terms of the leases, but has permitted lessees to pay royalties and rentals long after their due dates.

e) The defendant has failed to terminate leases in accordance with its own lease terms and regulations, although lessees have committed serious breaches for which an informed owner would have required cancellation; nor has the defendant required payment of penalties as required by 30 CFR 221.54 incorporated into the leases under provision 3(g).

f) The defendant has failed to require lessees to exercise reasonable diligence in drilling and operating wells for oil and gas on tribal land as provided in paragraph 3(f) of the leases and as required by federal regulations. As a result of this failure and refusal, the defendant has permitted lessees to hold leases on tribal land without development for years.

g) The defendant has failed either to require drilling and production of wells to offset and protect tribal leases from drainage, or to require the lessees to pay compensatory royalties.

## CLAIMS FOR RELIEF

Wherefore the Tribe prays:

1. For a determination that the defendant is liable to the plaintiff in damages for the injuries and losses caused through violations of the defendant's fiduciary and statutory responsibilities to the Tribe.

2. That defendant be ordered to render such accountings of its management and handling

of the Tribe's funds and mineral estate as are appropriate in aid of the Court's determination of the specific amount of money damages.

3. For a determination of the amount of damages due the plaintiff.

4. For such further relief as the Court may deem just.

Dated: __________, 2005.

Respectfully submitted,

______________________________
HARRY R. SACHSE
Sonosky, Chambers, Sachse
Enderson & Perry, LLP
1425 K Street, NW, Suite 600
Washington, DC 20005
(202) 682-0240 (Telephone)
(202) 682-0249 (Facsimile)
hsachse@sonosky.com
*Counsel of Record for Eastern Shoshone Tribe*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE SHOSHONE INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant*. | No. 4582-79 L, 4583-79 L<br>Judge Hewitt |
| THE ARAPAHO INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 4592-79 L, 4593-79 L<br>Judge Hewitt |

**FIRST AMENDED PETITION – NORTHERN ARAPAHO INDIAN TRIBE [PROPOSED]**

The Northern Arapaho Indian Tribe (the Tribe) alleges as follows:

ALLEGATIONS APPLICABLE TO ALL CLAIMS

1. This petition is filed pursuant to 28 U.S.C. § 1491 (1976) and 28 U.S.C. § 1505 (1976).

2. This petition does not assert any claim, or seek to recover any damages with respect to any claim now pending before this Court or any other Court.

3. The Tribe is a federally recognized Indian Tribe, residing on the Wind River Indian Reservation in Wyoming.

4. In 1851, by the Treaty of Fort Laramie, 11 Stat. 749, the United States recognized the title of the Tribe to large tracts of land on the Platte River. On May 10, 1868, the Tribe signed a treaty with the United States by which the tribe relinquished title to these lands in return for a "permanent home." Treaty of May 10, 1868, ratified July 25, 1868, Art. II, Stat. 655, 657.

5. Since 1878, the Tribe has been the beneficial owner of an undivided one-half interest in the Wind River Reservation.

6. By Act of March 3, 1905, Ch. 1452, 33 Stat. 1016, the United States through a "cession in trust" opened the northern two-thirds of the Reservation to non-Indian settlement. Under the Act the United States paid nothing for the cession, but agreed to dispose of surplus land to settlers with the proceeds to go to the Tribes. The Tribes remained the equitable owners of the land, including all mineral resources, until actually disposed of by the United States. United States v. Shoshone Tribe, 304 U.S. 111, 114 (1938). See Ash Sheep Company v. United States, 252 U.S. 159 (1920). There were known oil and gas resources within the "opened" part of the Reservation. By the Act of August 21, 1916, Ch. 363, § 1, 39 Stat. 519, Congress empowered the Secretary of the Interior to lease the "opened" land for oil and gas "under such terms and conditions as shall be by him prescribed" with the proceeds of royalties from the leases to be "applied to the use and benefit of said Tribe . . .".

7. Little of the land opened for non-Indian settlement by the 1905 Act was actually settled by non-Indians. By Act of July 27, 1939, Ch. 387, § 4, 53 Stat. 1129, (codified at 25 U.S.C. § 575, (1976)), all undisposed of lands in the opened portion of the Reservation, not within a reclamation project, were restored to the Tribes. In the meantime, however, in 1920, Congress authorized the Riverton Reclamation Project. It embraced about 332,000 acres. Act of June 5, 1920, Ch. 320, 41 Stat. 874, 915, and Act of March 4, 1921, Ch. 161, 41 Stat. 1367, 1404. The Project was constructed and through the years about 100,000 acres of the 332,000 acres were sold and the proceeds credited to the Tribes. An additional 70,500 acres, not required for the project, ultimately were restored to the Tribes under Section 4 of the Act of August 15, 1953, Ch. 509, 67 Stat. 592, 613. Under Section 5 of that Act, the remaining 161,520 acres were ceded to the Government subject to a 90% interest of the Tribes to the proceeds of mineral leases to be administered under the "mining and mineral leasing laws of the United States." By Act of August 27, 1958, § 1, 72 Stat. 935, the entirety of the mineral interests under those lands were "declared to be held by the United States in trust for the Shoshone and Arapahoe Tribes" and were required to be administered under the Indian Leasing Act of May 11, 1938, Ch. 198, 52 Stat. 347, (codified at 25 U.S.C. §§ 396a-396g (1976)), the general statute governing tribal oil and gas.

8. By Act of May 19, 1947, Ch. 80, 61 Stat. 102, (codified at 25 U.S.C. § 611 et seq. (1976)), the Secretary of the Interior was directed to divide the trust funds on deposit in the Treasury of the United States to the joint credit of the Shoshone and Arapahoe Tribes of the Wind River Reservation into separate accounts. Since the effective date of that Act, all income derived from tribal property held in common by the two Tribes has been divided evenly. From each Tribe's one-half, 85% is paid in a monthly per capita to the respective members of the

Tribe. The remaining 15%, referred to as the "15% fund" is maintained in the Treasury of the United States or under the control of the Secretary of the Interior.

9. Under the Treaty of May 10, 1868, 15 Stat. 655, the Trade and Intercourse Act as amended, 25 U.S.C., § 177, (1976), the Commerce, War and Treaty powers of the Constitution, the Act of August 21, 1916, 39 Stat. 519, 25 U.S.C. §§ 396a-396g (1976), and the decisions of the United States Supreme Court and this Court, the United States has a fiduciary duty to the Tribe requiring that it exercise "the most exacting fiduciary standards" in managing the Tribes' land and mineral estate and trust funds, Navajo Tribe of Indians v. United States, 176 Ct. Cl. 502, 507 (1966).

10. The Tribe at all times since 1878, has been the beneficial owner of funds, real property and mineral interests held in trust and managed by the United States for the Tribe.

11. In breach of its fiduciary and statutory duties to the Tribe, the defendant, for the entire period, has failed to manage plaintiff's trust funds as a prudent administrator and has failed to manage or administer the Tribes' mineral and other income producing property in a manner consistent with its superior skill and knowledge or even at least as well as an informed owner of such property.

CLAIM I

(FAILURE OR DELAY IN COLLECTING FUNDS DUE TO THE TRIBE)

12. Defendant, at all times relevant, has been under fiduciary and statutory obligations to collect funds owing to the Tribe arising from the use or lease by Defendant or third parties of the Tribe's mineral estate, including but not limited to oil, gas, uranium, and gravel.

13. In breach of its fiduciary duty to the Tribe and to the Tribe's detriment, Defendant has delayed unreasonably, or failed to collect, such funds.

CLAIM II

(DELAY IN DEPOSITING)

14. On information and belief, the Tribe alleges that Defendant, in breach of its fiduciary duty to the Tribe and to the Tribe's detriment, delayed for unreasonable periods of time depositing the Tribe's funds in interest-bearing accounts.

CLAIM III

(HOLDING TRUST FUNDS IN THE TREASURY
AT INADEQUATE INTEREST)

15. During a major part of the period in suit, Defendant has held Plaintiff's trust funds in its treasury at a rate of four percent per annum simple interest. Interest earned in the Treasury is segregated into separate accounts and no interest is paid by the United States on the accounts.

16. During relevant times, there were readily available for acquisition with the Tribe's trust funds, pursuant to 25 U.S.C., § 162a (1976), various obligations of the Defendant and its agencies, as well as bank certificates or obligations guaranteed or secured as required by 25 U.S.C., § 162a carrying interest rates higher than the four percent.

17. Defendant breached its fiduciary duty to the Tribe's detriment by, in effect, borrowing tribal trust funds for its own purposes and benefit and by failing to invest such funds and the interest on such funds to earn maximum income for the Tribe.

CLAIM IV

(INVESTMENT AT INADEQUATE RATES)

18. Defendant invested certain of the Tribe's trust funds in various governmental and private securities guaranteed or secured as required by 25 U.S.C., § 162a. On information and belief, the Tribe alleges that Defendant did so in breach of its fiduciary duty to the Tribe and to the Tribe's detriment in that at the time the investments were made other securities or obligations of the same or similar type, guaranteed or secured as required by 25 U.S.C., § 162a, were readily available for investment at higher interest rates.

CLAIM V

(REVERSE SPENDING)

19. The Tribe alleges and believes that Defendant has consistently made expenditures from the Tribe's interest-bearing funds or investments returning a higher yield when lower yield funds or funds bearing no interest were available.

CLAIM VI

(MISUSE OF MISCELLANEOUS REVENUES)

20. In breach of its fiduciary duty to the Tribe and to the Tribe's detriment, Defendant had failed to deposit tribal funds in the United States Treasury and has used such funds derived from the Tribe's trust property for purposes not for the exclusive benefit of the Tribe.

21. Defendant, through the Secretary of the Interior, manages a tribal credit program. The Tribe alleges on information and belief that Defendant, in breach of its fiduciary duty, and to the Tribe's detriment, has mismanaged the program by, among other things, keeping large

sums of tribal money in non-interest-bearing checking accounts when proper management would require such funds to be placed at interest.

CLAIM VII

(MISMANAGEMENT OF PLAINTIFF'S OIL AND GAS ESTATE)

22. At all relevant times, the Tribe has been the beneficial owner of an undivided one-half interest in substantial oil, gas and mineral deposits on the Reservation. Under the Treaty of May 10, 1868, 15 Stat. 655, the Trade and Intercourse Act as amended, 25 U.S.C. § 177 (1976), the statutes regulating oil and gas leasing on Indian lands including but not limited to 25 U.S.C. §§ 396a-396g, and the Act of August 2, 1916, 39 Stat. 519, as well as the regulations under such acts (including 25 C.F.R. Parts 171 and 184 (1979) and 30 C.F.R. Part 221 (1978)), the United States has the obligation to manage the tribal oil and gas resource in a manner consistent with defendant's superior skill and knowledge in the area of oil and gas management and in all instances at least equal to the management of oil and gas lands by an informed owner of such lands. Defendant, in breach of its statutory and trust responsibility to the Tribe, and to the Tribe's detriment, has mismanaged plaintiff's oil and gas estate as set out in the following subparagraphs:

(a) Defendant, through its Bureau of Reclamation, has burdened the Tribe's oil and gas estate and interfered with its development; inconsistent with its fiduciary and statutory obligations and the interests of the Tribe, Defendant has applied regulations and restrictions employed on public lands of the United States to tribal lands, in particular, to tribal oil and gas lands within reclamation areas;

(b) Defendant has excluded from oil and gas leases river bottoms and lake bottoms owned by the Tribe;

(c) Defendant has held large sums of money received as deposits for bids for the right to lease the Tribe's oil and gas without placing the same at interest for the benefit of the Tribe;

(d) Defendant has failed to require oil and gas lessees to comply with the terms of their leases on tribal lands and has failed to oversee, monitor and administer said oil and gas leases on a basis at least equal to the management of oil and gas lands by the informed owner of oil and gas lands in, among others, the following respects:

(i) Defendant has not required that royalties paid under the Tribe's oil and gas leases be the stated percentage of the fair market value of the oil and gas produced, but in violation of defendant's own regulations has consistently accepted the lessees' reports of price received for the gas or oil as the value thereof with the result that the Tribe lost significant revenues to which it is entitled under its leases and defendant's own regulation;

(ii) Where natural gas has been produced, Defendant has consistently accepted the interstate controlled price of natural gas or prices lower than the controlled price as the value of the gas rather than the intrastate price which during a substantial portion of the time at issue has been substantially higher. As a result, the Tribe has received its royalty percentage based upon a small fraction of the actual value of the gas produced;

(iii) Defendant has not required that lessees account for and pay royalties on the value of liquid hydrocarbon substances produced and saved on the leased premises as

required by the regulations and the provisions of the leases and has thereby failed to obtain for the Tribe the highest price permitted under the lease;

(iv) Defendant has not required prompt payment of royalties on a monthly basis as required by the terms of the leases, but has permitted lessees to pay royalties and rentals long after their due dates;

(v) Defendant has failed to terminate leases in accordance with its own lease terms and regulations, although lessees have committed serious breaches for which an informed owner would have required cancellation; nor has Defendant required payment of penalties as required by 30 CFR § 221.54 (1978), incorporated into provision 3(g) of the leases;

(vi) Defendant has failed to require lessees to exercise reasonable diligence in drilling and operating wells for oil and gas on tribal land as provided in paragraph 3(f) of the leases and as required by Federal regulation. 25 C.F.R. § 184.22 (1979). As a result of this failure and refusal, the Defendant has permitted lessees to hold leases on tribal land without development for years;

(vii) Defendant has failed either to require drilling and production of wells to offset and protect tribal leases from drainage, or to require the lessees to pay compensatory royalties.

CLAIMS FOR RELIEF

The Tribe Prays this Court:

1. For a determination that Defendant is liable to the Tribe in damages for the injuries and losses caused through violations of Defendant's fiduciary and statutory responsibilities to the Tribe set out above.

2. That Defendant be ordered to render such accountings of its management and handling of the Tribe's funds and mineral estate as are appropriate in aid of the Court's determination of the specific amount of money damages.

3. For a determination of the amount of damages due the Tribe.

4. For such further relief as the Court may deem just.

Dated: ___________, 2005

Respectfully submitted,

___________________________

RICHARD M. BERLEY
Ziontz, Chestnut, Varnell,
Berley & Slonim
2101 4th Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 (Telephone)
(206) 448-0962 (Facsimile)
rberley@zcvbs.com
*Counsel of Record for Northern Arapaho Tribe*