# In the United States Court of Federal Claims

Nos. 4582-79 L, 4583-79 L, 4592-79 L, 4593-79 L
(E-Filed: March 27, 2006)

THE SHOSHONE INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

THE ARAPAHO INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Motion for Leave to Amend Complaint; RCFC 15(a); Futility as Justification for Denial; Department of the Interior and Related Agencies Appropriations Acts, 1990-2005; Department of the Interior, Environment, and Related Agencies Appropriations Act of 2006, Pub. L. No. 109-54, 119 Stat. 499, 519; 28 U.S.C. § 2501.

Harry R. Sachse, Washington, DC, for plaintiff Eastern Shoshone Tribe. Anne D. Noto, Washington, DC, Susan M. Williams and Lisa K. Condon, Corrales, NM, of counsel.

Richard M. Berley, Seattle, WA, for plaintiff Northern Arapaho Tribe. Brian W. Chestnut, Seattle, WA, of counsel.

Terry M. Petrie, Denver, CO, with whom was Sue Ellen Wooldridge, Assistant Attorney General, Environment & Natural Resources Division, Department of Justice, Washington, DC, for defendant. Thomas Kearns, Office of the Solicitor, U.S. Department of the Interior, Washington, DC, of counsel.

OPINION and ORDER

HEWITT, Judge

Before the court is Tribes' Motion for Leave to Amend Petitions (Pls.' Mot. or Motion), Defendant's Response to Tribes' Motion for Leave to Amend Petitions (Def.'s Resp.), and Tribes' Reply Memorandum Re Motion to Amend Petitions (Pls.' Reply). The Motion and responsive briefs were filed simultaneously in subdockets 4582-79L/4592-79L and 4583-79L/4593-79L.[1]

---

[1]The Eastern Shoshone (the Shoshone) and the Northern Arapaho Tribe (the Arapaho) of the Wind River Reservation (collectively, the Tribes) filed separate actions in this court on October 10, 1979. The case identifier 458-79L was assigned by the court to the Shoshone suit while the identifier 459-79L was assigned to the Arapaho suit. The cases were consolidated by the court's Order of November 8, 1979, with case No. 458-79L designated as the lead case. To facilitate legal processing of the diverse claims presented, the consolidated case was bifurcated into a sand and gravel component which was designated as subdocket Nos. 458a-79L and 459a-79L, see Order of June 13, 2001 ¶ 1, at 1, with all other claims, predominantly involving oil and gas issues, remaining in the lead case docket, id. at 3.

Following resolution of the sand and gravel claims, see, e.g., Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States, 52 Fed. Cl. 614 (2002), the remaining claims were further segmented with the creation of subdockets for claims related to mineral resource mismanagement and for claims related to trust funds, see Order of Aug. 27, 2004 at 2. The Order specified that "[a]ll claims of plaintiffs related to mineral resource mismanagement other than claims resolved in subdocket Nos. 458a-79L and 459a-79L or covered by the Stipulation for Dismissal of Claims Regarding 'Oil and Gas Phase One Issues'" were to be designated as subdocket Nos. 458b-79L and 459b-79L. Id. ¶ 1. Separate subdockets numbered 458c-79L and 459c-79L were established for "[a]ll claims of plaintiffs related to trust funds, id. ¶ 4, which the court specified as "actions or inactions of the trustee after receipt of funds by the trustee, including plaintiffs' claim with respect to funds being held in special deposit accounts," id. The case designations were converted from alphanumeric to entirely numeric format by the Order of Feb. 23, 2005, in keeping with the requirements of the court's electronic case management system for electronic case filing. The lead case remains 458-79L which is consolidated with 459-79L. Subdocket Nos. 458a and 459a were redesignated as 4581 and 4591; subdocket Nos. 458b and 459b were redesignated as 4582 and 4592; and subdocket Nos. 458c and 459c were redesignated as 4583 and 4593, respectively. Order of Feb. 23, 2005 ¶¶ 1-3, at 1-2. The Tribes' Motion for Leave to Amend Petitions (Pls.' Mot. or Motion) concerns claims arising both from alleged mismanagement of the Tribes' mineral estate and from alleged mismanagement of trust funds following collection held by defendant as trustee. See, e.g., Pls.' Mot. Exhibit (Ex.) A ¶¶
(continued...)

## I. Background

This case was filed in 1979 by the Eastern Shoshone and the Northern Arapaho Tribes (collectively, the Tribes), both resident on and owners of an undivided half interest in the Wind River Reservation of Wyoming. See Tribes' Motion at 1-2. The Tribes sought damages from the United States for breach of trust in mismanaging the tribes' natural resources up to the point of collection and with respect to its handling of tribal funds post-collection. Id. at 2. This complex case, involving both trust asset and trust mismanagement issues across a range of resources including sand, gravel, oil, and gas, has been divided into four phases for adjudication. See Order of June 13, 2001. While two phases have been litigated[2] and have reached settlement,[3] other phases remain at earlier stages of litigation. The current motion, filed simultaneously in two subdockets, is of general import to all phases because the petitions that plaintiffs propose to amend underlie all phases of the case.[4] Resolution of the Tribes' Motion requires the court to

---

[1](...continued)
10, 21-23 and Ex. B ¶¶ 11, 22. While the Motion was filed in subdocket Nos. 4582/4592-79L and 4583/4593-79L, the "Petitions" referred to in the title of the Motion are those initially filed in 1979 in the two original actions. See Pls.' Mot. at 2. Any amendment to the petitions would therefore apply both to the main docket and to all remaining subdockets of this consolidated case.

[2]See generally Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States, 52 Fed. Cl. 614 (2002) and 51 Fed. Cl. 60 (2001) (regarding sand and gravel phase) and 56 Fed. Cl. 639 (2003), 58 Fed. Cl. 77 (2003), and 58 Fed. Cl. 542 (2003) (regarding oil and gas phase one).

[3]See Settlement Agreement, filed October 1, 2002 in Case No. 79-4581/4591 and Settlement Agreement Regarding Oil and Gas Phase I Interest, filed March 6, 2006 in Case No. 79-458/459.

[4]The original complaints in this case were filed as "petitions" before the United States Court of Claims, which at the time discharged both trial and appellate functions. The Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 25, extracted the appellate function of the Court of Claims and conferred it on the newly established United States Court of Appeals for the Federal Circuit, and created the United States Claims Court to continue the trial function of the Court of Claims. The name United States Claims Court was changed to United States Court of Federal Claims on October 29, 1992 with the enactment of the Federal Court Administrative Act of 1992, Pub. L. No. 102-572, § 902, 106 Stat. 4506, 4516. Throughout this Opinion, the court employs the original designation of the complaints as petitions for the purpose of consistency with the parties' briefing.

address its jurisdiction under relevant statutes of limitations as interpreted in recent case law.

Through the Tucker Act, 28 U.S.C. § 1491 (2000), Congress authorized the United States Court of Federal Claims to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Indian Tucker Act makes explicit that this court's jurisdiction extends to claims by "any tribe, band, or other identifiable group of American Indians" against the United States accruing after August 13, 1946. 28 U.S.C. § 1505 (2000) (collectively, the Tucker Act and the Indian Tucker Act are referred to as the Tucker Acts). The significance of the accrual date established in 28 U.S.C. § 1505 is not that it sets a cut-off point constituting the earliest date from which injury on a later-accruing claim could be calculated, but rather that Congress had expressly provided that all claims accruing prior to August 13, 1946 were to be heard by the Indian Claims Commission, created by legislation enacted by Congress on that date. See Indian Claims Commission Act, ch. 959, § 2, 60 Stat. 1049, 1050 (1946) ("No claim accruing after the date of approval of this Act shall be considered by the Commission.").

The general statute of limitations for claims under the Tucker Acts establishes a six-year jurisdictional window from the date of accrual of a claim. 28 U.S.C. § 2501 (2000) ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). Congress has clarified the meaning of the "date of accrual" of certain Indian trust claims in a series of appropriations acts beginning in 1990 and continuing to the present (collectively, Appropriations Acts).[5] The current (2006) Appropriations Act provides in pertinent part that

---

[5]The following is a complete list of the Appropriations Acts since 1990: Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63, 115 Stat. 414; Act of February 20, 2003, Pub. L. No. 108-7, 117 Stat. 11; Act of November 10, 2003, Pub. L. No. 108-108, 117 Stat. 1263; Act of December 8, 2004, Pub. L. No. 108-447, 118 Stat. 2809; Act of August 2, 2005, Pub. L. No. 109-54, 119 Stat. 499.

> notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.

Department of the Interior, Environment, and Related Agencies Appropriations Act of 2006 (2006 Appropriations Act), Pub. L. No. 109-54, 119 Stat. 499, 519. The United States Court of Appeals for the Federal Circuit construed identical language from the 2003 Appropriations Act in an appeal from this court's statute of limitations holding pertaining to asset and trust fund management claims in the sand and gravel phase of this case.[6] See Shoshone Indian Tribe of the Wind River Reservation v. United States, 364 F.3d 1339, 1346-47, reh'g and reh'g en banc denied (Fed. Cir. 2004) (Shoshone). The Federal Circuit found that "[b]y the plain language of the [2003 Appropriations] Act, Congress has expressly waived its sovereign immunity and deferred the accrual of the Tribes' cause of action until an accounting is provided." Id. at 1346. While affirming this court's decision that the Appropriations Acts prevent the accrual of asset and trust fund management claims until after the Tribes receive an accounting, the Federal Circuit also defined and delimited the asset and trust fund management claims as to which accrual was prevented by the Appropriations Acts as "those relating to (1) the Government's mismanagement of tribal trust funds after their collection and (2) losses to the trust resulting from the Government's failure to timely collect amounts due and owing to the Tribes under its sand and gravel contracts." Id. at 1342.

With respect to the sand and gravel claims at issue in that phase of this case, the Federal Circuit noted that "the Supreme Court's recent decision in United States v. Navajo Nation may moot the Tribes' claims relating to a breach of trust for asset mismanagement pursuant to the Indian Mineral Leasing Act [(IMLA)] of 1938, i.e., claims that the Government failed to obtain the best possible market rates for the sand and gravel contracts." Shoshone, 364 F.3d at 1349 (citing United States v. Navajo Nation, 537 U.S. 488 (2003)). The Federal Circuit particularly noted the Supreme Court's determination that the government did not have an enforceable duty to ensure a higher rate of return than the minimum royalty established by statute. Id. (citing Navajo Nation, 537 U.S. at 507-08). Applying this determination to the mismanagement claims raised by the Tribes relative to their sand and gravel assets, the Federal Circuit found that "the Goverment did not have a fiduciary or statutory duty to maximize the prices obtained under the leases entered into between the tribes and third parties." Id. at 1350.

---

[6] Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States, 51 Fed. Cl. 60, 68 (2001) (finding that the Appropriations Acts covered claims both for losses due to mismanagement of funds after they are received and held in trust by defendant and for losses due to mismanagement of the Tribes' mineral and other assets).

While the Federal Circuit decision expressly precluded maximization claims related to sand and gravel asset management, it also found that the Supreme Court's holding in Navajo Nation "does not foreclose liability for failing to manage or collect the proceeds from the approved mining contracts in violation of the trust responsibilities owed under the implementing regulations of the IMLA." Id. The specific fiduciary requirements established by the governing statutes and implementing regulations are key to determining the government's liability, as the Supreme Court makes clear in Navajo Nation, noting that "both the IMLA and its implementing regulations address oil and gas leases in considerably more detail than coal leases." 537 U.S. at 508 n.11. Similarly, the Federal Circuit's holding in relation to sand and gravel asset management claims did not address the more comprehensive regulatory environment governing oil and gas resources. See Shoshone, 364 F.3d at 1343; cf. Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States, 56 Fed. Cl. 639, 646-48 (2003) (reviewing the statutory frameworks governing valuation of oil and gas).

## II. Discussion

Plaintiffs have requested leave pursuant to Rule of the Court of Federal Claims (RFCF) 15(a) to modify the petitions filed independently by the Eastern Shoshone and Northern Arapaho Tribes in this court in 1979 to include damages allegedly suffered by the Tribes prior to August 14, 1946. Pls.' Mot. at 1. According to the Motion and the proposed amended petitions attached to the Motion, "[t]he only substantive amendments are to Paragraphs 9 and 10 of the Shoshone petition and paragraphs 10 and 11 of the Arapaho petition to remove August 14, 1946, as the earliest date for the claims and substitute an earlier date." Id. The "earlier date" proposed by plaintiffs reflects the date of establishment of the Wind River Reservation, July 3, 1868, in the case of the Eastern Shoshone, and 1878, the date when the Northern Arapaho Tribe became a beneficial owner of an undivided one-half interest in the Wind River Reservation. Id. at 1-2. In addition to changing the date from which damages are claimed, plaintiffs also propose to modernize the spelling and designation of the Tribes' names. Id. at 2. The proposed changes do not alter the respective statements of claims in any other respect. See Pls.' Reply at 3 ("The Tribes . . . did not propose major redrafts of their original petitions. They simply removed references to 1946 as the earliest potential date of claimed mismanagement, because it is now inconsistent with the governing law."); Def.'s Resp. at 4 ("The Tribe's proposed amendments do not make substantive changes to their original claims.").

### A. Standard of Review

The rules of this court permit amendment of a party's pleading as a matter of right under two conditions: (1) at any time before a responsive pleading is served, or (2) within twenty days following service of the pleading in cases where no responsive pleading is permitted and the action has not been placed upon the trial calendar. RCFC 15(a) (2002). Otherwise, as in this case, the party wishing to amend a pleading must obtain the written

consent of the opposing party or seek and receive leave of the court. Id. The rules of the court direct that in such cases "leave shall be freely given when justice so requires." Id. Among the reasons justifying an exception to the rule that leave to amend a pleading be freely granted are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

Defendant opposes plaintiffs' Motion on the ground that the proposed amended petitions would be futile. Def.'s Resp. at 1. Defendant argues that "the Tribes' proposed amended petitions include claims involving the mismanagement of trust assets accruing prior to August 14, 1946. These claims are time-barred pursuant to the decision by the United States Court of Appeals for the Federal Circuit in Shoshone . . . ." Id. at 1-2. The proposed amended petitions are, according to defendant, "futile on their face and could not withstand a motion to dismiss, because they seek damages as to trust asset mismanagement for periods prior to August 14, 1946." Id. at 6. Such claims, defendant argues, are outside of the limited exception created by the Federal Circuit's construction of the Appropriations Acts and therefore remain subject to the six-year statute of limitations imposed by 28 U.S.C. § 2501. See id. at 6-7. Defendant concludes that "[b]ecause the Tribes did not bring their pre-1946 asset mismanagement claims by August 13, 1951 . . . they are forever barred from asserting claims for mismanagement of trust assets for periods prior to August 14, 1946." Id.

A motion to amend may be deemed futile if a claim added by the amendment would not withstand a motion to dismiss. See Slovacek v. United States, 40 Fed. Cl. 828, 834 (1998) (denying a motion to amend the complaint by adding a cause of action, the purpose of which could be realized only through issuance of an injunction that was outside the court's jurisdiction). Where the proposed amendment would be subject to the same legal defect found by the court to justify dismissal of claims under the original complaint, leave to amend may be denied. See Cultor Corp. v. A.E. Staley Mfg. Co., 224 F.3d 1328, 1333 (Fed. Cir. 2000) ("[Plaintiff] has not made a colorable argument of possible success . . . . Futility was apparent, and is adequate grounds for the denial of leave to amend."); Mitsui Foods, Inc. v. United States, 867 F.2d 1401,1404 (Fed. Cir. 1989) ("Even if [plaintiff's] motion [for leave to amend the complaint] was granted and the amendment permitted, the [trial court's] decision and judgment still would be correct. On the basis of the apparent futility of Mitsui's proposed amendment, we cannot conclude that the [trial court] abused its discretion by denying leave for that amendment.").

Defendant cites a Third Circuit case in support of its argument that a proposed motion to amend may be denied where the statute of limitations would preclude the amended claim. See Def.'s Resp. at 6. In Jablonski v. Pan American World Airways, Inc., 863 F.2d 289 (3d Cir. 1988), a passenger injured when an aircraft made a rough landing filed a tort action in Pennsylvania state court against the air carrier more than two years after the personal injuries were sustained. 863 F.2d at 290. Within four years of the

incident, he also filed a negligent breach of contract claim against the carrier. Id. The case was removed on diversity grounds to federal district court. Id. Applying Pennsylvania law, the district court found that both claims fell under the state's two-year statute of limitations for actions in tort rather than the state's four-year limitation period for breach of contract claims, id. at 291, and granted defendant's motion for judgment on the pleadings, id. at 290. The district court also denied Jablonski's motion to amend his tort action to allege negligent breach of contract. Id. On appeal, the United States Court of Appeals for the Third Circuit determined that "the general rule in Pennsylvania is that claims for damages for personal injur[i]es must be brought within the two year limitation period and the only existing exception to that rule is inapplicable." Id. at 292. Finding that both claims were therefore time-barred by the two year limitation period, the court upheld the district court's ruling. Id.

Turning to the district court's denial of Jablonski's motion to amend the complaint under Federal Rule of Civil Procedure 15(a),[7] the court of appeals ruled that the district court had not abused its discretion because the "proposed amendment would have alleged a negligent breach of contract claim which, for the reasons already stated, is barred under Pennsylvania's two year limitation period." Id. The amendment would have been futile, according to the court, "because the amended complaint could not withstand a renewed motion for judgment on the pleadings." Id.

Unlike the plaintiff in Jablonski, see 863 F.2d at 292 n.3, the Tribes do not seek to substitute an alternative theory of liability for the breach of trust claims asserted in the original petitions. Rather, the sole substantive change in the proposed amendment is to substitute the respective original settlement date of each tribe on the Wind River Reservation for the date of August 14, 1946, which was provided in the original petitions as the earliest date from which damages were claimed. See Pls.' Mot. at 2; Pls.' Reply at 3. The Tribes' proposed amendments are not precluded by the statute of limitations applicable here.

B. The Proposed Amended Petitions Are Not Facially Futile

Defendant acknowledges that "claims for mismanagement of certain trust fund monies . . . may be allowable for periods pre-dating 1946" but argues that the Tribes' motion to amend the petitions is nonetheless futile because it fails to distinguish between allowable claims for mismanagement of trust funds and time-barred claims for mismanagement of trust assets. Def.'s Resp. at 6. Defendant specifically identifies one of the eight enumerated claims, constituting paragraphs 21-25, in the Shoshone petition, and one of the seven enumerated claims, constituting paragraph 22, in the Arapaho

---

[7]RCFC 15(a) is identical in text to Federal Rule of Civil Procedure 15(a) and case law construing the Federal Rules of Civil Procedure may be used to interpret the RCFC. See Te-Moak Bands of W. Shoshone Indians v. United States, 948 F.2d 1258, 1260, n.4 (Fed. Cir. 1991).

petition, as "includ[ing] allegations of oil and gas asset mismanagement." Def.'s Resp. at 4 (citing Exhibits A and B, respectively, to Plaintiffs' Motion). In each case, the identified claim bears the caption "Mismanagement of Plaintiff's Oil and Gas Estate." See Pls.' Mot. Exhibit (Ex.) A, Claim VIII, at 7 and Ex. B, Claim VII, at 7. Within each of the claims identified by defendant as including allegations of asset mismanagement, as opposed to trust fund mismanagement, however, are allegations that arguably invoke the same type of lease and contract breaches that the Federal Circuit identified as "losses to . . . trust funds." Shoshone, 364 F.3d at 1350 ("In the context of the [2003 Appropriations] Act, 'losses to . . . trust funds' may be understood to cover losses resulting from the Government's failure to timely collect amounts due and owing to the Tribes under its sand and gravel contracts."). The types of losses that constitute cognizable losses to trust funds under the Federal Circuit's construction of the Appropriations Acts are further defined by the court:

> We therefore interpret the phrase "losses to ... trust funds" to mean losses resulting from the Government's failure or delay in (1) collecting payments under the sand and gravel contracts, (2) depositing the collected monies into the Tribes' interest-bearing trust accounts, or (3) assessing penalties for late payment. Fiduciary breaches such as these result in losses to trust funds that are separate and distinct from the mismanagement of trust funds once collected.

Id. at 1350-51. Among the specific allegations cited under Claim VIII in the proposed amended petition for the Eastern Shoshone Tribe are claims of losses due to failure to deposit monies collected for the benefit of the Tribe, failure to collect the monies owed under the terms of approved leases as required by relevant federal regulations, failure to assess penalties called for under the leases, and failure to require payment of penalties owed:

> 24. The defendant has held large sums of money received as deposits for bids for the right to lease the Tribe's oil and gas without placing the same at interest for the benefit of the Tribe.
>
> 25. The defendant has failed to require oil and gas lessees to comply with the terms of their leases on tribal lands and has failed to oversee, monitor and administer said oil and gas leases on a basis at least equal to the management of oil and gas lands by the informed owner of oil and gas lands in, among others, the following respects:
>
> > a) The defendant has not required that royalties paid under the Tribe's oil and gas leases be the stated percentage of the fair market value of the oil and gas produced, but in violation of defendant's own regulations has consistently accepted the lessees' report of price received for the gas or oil as the value

> thereof with the result that the Tribe lost significant revenues to which it is entitled under its leases and defendant's own regulations.
>
> b) Where natural gas has been produced, the defendant has consistently accepted the interstate controlled price of natural gas or prices lower than the controlled price as the value of the gas rather than the intrastate price which during a substantial portion of the time at issue has been substantially higher. As a result, the Tribe has received its royalty percentage based upon a small fraction of the actual value of the gas produced.
>
> c) The defendant has not required that lessees account for and pay royalties on the value of liquid hydrocarbon substances produced and saved on the leased premises as required by the regulations and the provisions of the leases and has thereby failed to obtain for the Tribe the highest price permitted under the lease.
>
> d) The defendant has not required prompt payment of royalties on a monthly basis as required by the terms of the leases, but has permitted lessees to pay royalties and rentals long after their due dates.
>
> e) The defendant has failed to terminate leases in accordance with its own lease terms and regulations, although lessees have committed serious breaches for which an informed owner would have required cancellation; nor has the defendant required payment of penalties as required by 30 CFR 221.54 incorporated into the leases under provision 3(g).

Pls.' Mot. Ex. A, at 7-9. Nearly identical allegations are stated in the proposed amended petition for the Northern Arapaho Tribe. See Pls.' Mot. Ex. B, at 7-9. While these specific allegations are grouped under the caption "Mismanagement of Plaintiff's Oil and Gas Estate" in the proposed amended petitions, they repeatedly raise what appear to be claims of contract and regulatory violations rather than a more general allegation of "failure to obtain a maximum price [for] the mineral assets" that the Federal Circuit found to be outside the scope of the provisions of the Appropriations Acts preventing accrual. Shoshone, 364 F.3d at 1350.

Without addressing the merits of the allegations made by the Tribes, the court finds sufficient comparability between the detailed allegations in the claims identified by defendant as "claims involving trust assets," Def.'s Resp. at 4, and the examples of

contract and regulatory violations that the Federal Circuit recognizes as pre-collection "losses to . . . trust funds," Shoshone, 364 F.3d at 1350, to reject defendant's argument that "[t]he Tribe's proposed amended petitions are futile on their face and could not withstand a motion to dismiss," Def.'s Resp. at 6.

Although some of the specific asset-related issues raised by the Tribes may be found to be outside the scope of the Appropriations Acts under the Federal Circuit's holding in Shoshone and therefore subsequently dismissed, the chief effect of the proposed changes to the petitions would be simply to reflect the possibility of additional damages for claims found to be valid for periods prior to 1946. In similar circumstances, this court has allowed amendment of a complaint to account for an expanded calculation of damages that do not constitute or arise from a separate claim. See Bassett, New Mexico LLC v. United States, 46 Fed. Cl. 393, 394-395 ("To the extent that damages and just compensation are broad concepts, the court must allow plaintiff's Motion for Leave to Amend Complaint. It is in the interest of justice to allow for liberal amendment generally in order to facilitate the resolution of all properly related claims for relief.").

III. Conclusion

For the foregoing reasons, the Tribes' Motion for Leave to Amend Petitions is ALLOWED. Plaintiffs shall FILE the First Amended Petitions in the consolidated case docket, 79-458L and 79-459L and shall file notices referring to the filing of such First Amended Petitions in the subdocket for all other phases of the case.

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge